## Case No. 3,662.

### DAVOLL et al. v. BROWN.

[1 Woodb. & M. 53;[1] 2 Robb. Pat. Cas. 303; 3 West. Law J. 151; Merw. Pat. Inv. 414.]

Circuit Court, D. Massachusetts. Oct. Term, 1845.

CONSTRUCTION OF PATENTS — PROVINCE OF COURT AND JURY—RULES OF CONSTRUCTION.

1. It is the duty of the court, rather than the jury, to construe the language used in a specification of a patent, if no parol evidence is offered in explanation, or none which is contradictory.
   [Cited in Geier v. Goetinger, Case No. 5.299; Brush Electric Co. v. Electric Imp. Co., 52 Fed. 974.]

2. A patent is not to protect a monopoly of what existed before and belonged to others, but to protect something, which did not exist before, and which belongs to the patentee.
   [Cited in Smith v. Downing, Case No. 13,036.]

3. A construction of patents, liberal for the patentees, is proper. But the description of the patent must be so certain, as to be understood by those acquainted with the subject-matter.
   [Cited in Hogg v. Emerson, 6 How. (47 U. S.) 484; Smith v. Downing, Case No. 13,036; Winans v. Denmead, 15 How. (56 U. S.) 341.]

4. But the whole of the specification, as well as the summary and the drawings, are generally to be examined and compared, and not one alone looked to, in order to decide what new part or new combination is claimed to be invented and protected.
   [Cited in Hovey v. Stevens, Case No. 6,745; Aiken v. Bemis, Id. 109; Teese v. Phelps, Id. 13,819.]

5. In coming to a result, practical views, rather than subtle distinctions, must govern.

This was an action on the case for a violation of a patent right, owned by the plaintiffs [William C. Davoll and others], for an improvement in the speeder for roving cotton. The letters patent [No. 3,089] were averred to have issued May 19th, 1843. The general issue was pleaded, and notices given of several defences, all of which at the trial here at this term were found by the jury against the defendant [James S. Brown]. He then moved for a new trial, on account of a supposed misdirection by the court to the jury, in relation to the specification, a copy of which is annexed.[2]

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

[2] The schedule referred to in these letters patent, and making part of the same: "To All Whom It may Concern: Be it known, that I,

B. R. Curtis and Mr. Warren, for plaintiffs.

Dexter & Ames, for defendant.

WOODBURY, Circuit Justice. This motion is founded upon the position, that, by

William C. Davoll, of Fall River, in the county of Bristol, and state of Massachusetts, have invented certain new and useful improvements in the machine known by the name of 'Speeder,' 'Double Speeder,' or 'Fly-Frame,' used for roving cotton, preparatory to spinning, and I do hereby declare that the following is a full and exact description thereof: My main improvement consists in the manner in which I arrange the spindles, in two rows, by means of which arrangement only about one half the room is required to receive the same number of spindles; the operator can also attend to a greater number than usual; much less power will be required to put them in motion; the cost per spindle will also be much less, the double row requiring but little more gearing than a single row, and the machine will bear running at a much higher velocity than the English fly-frame. In the accompanying drawing, figure 1 represents an end view of the machine, and figure 2 a top view of a spindle or flyer-rail. The position these rails occupy in the machine, is shown at n and o, figure 1. n being an end view of the spindle, and o of the flyer-rail, with the requisite gearing upon them, which is the same on each of them. These rails, instead of being drilled. like those in common use, with a single row of holes for supporting the spindles which pass through them, are drilled with a double row, as shown at a a, and b b, figure 2. The back row, b b, is placed about five inches from the front row, a a, or about the width of the flyer to be used. The holes b b, of the back row, are drilled intermediate between those of the front row a a, and by this arrangement the bobbins h are readily changed. The spindles e e e, figure 1, work up and down through the rows of holes a a and b b, and through the tubed wheels c c, figures 1 and 2, and also through the bottoms of the flyers as seen at a. The respective revolving and vertical motions of the spindles and flyers are effected in any of the known modes. The flyers, as shown in the back row i, figure 1, are made to stand with their planes at right angles to those of the front row k; this. with their intermediate position, greatly facilitating the changing of the bobbins. To the bottom of each flyer a tube wheel is attached, as seen at c, figures 1 and 2; and a similar wheel is attached to each spindle, as shown at c c, figure 1, and motion is consequently communicated to them independently; but the respective flyers and spindles of both rows are geared into the same intermediate wheels, f f, as shown in figure 2. The above constitutes the whole gearing for giving motion to the back row of flyers and spindles. It will be seen. that the flyers, as used by me and shown at i i and k k, are made in one continuous piece, instead of being open at the bottom, as is the case with those generally used in the English fly-frame, and this, among other reasons, enables me to give the increased velocity above referred to. Having thus fully described the nature of my invention, in the improved construction of the speeder, double speeder, or fly-frame, what I claim therein as new, and desire to secure by letters patent, is the arrangement of the spindles and flyers in two rows, in combination with the described arrangement of gearing. And this I claim, whether the said gearing be arranged precisely as herein represented, or in any other manner which is substantially the same, producing a like result, upon the same principle. William C. Davoll. Witnesses: B. K. Morsell, Edwin L. Brundage."

the specification, the improvement of the plaintiff is not confined to the use of the bow-flyer, that is, the flyer in "one continuous piece," as part of his new combination; and that the court, in charging the jury that it was so confined, on a fair construction of the whole specification and drawing, erred in point of law. In the argument, the counsel seemed to contend, that there was another error, in not leaving the point to the jury, as a question of fact, whether the bow-flyer required a different gearing from the open flyer, and if it did, then the bow-flyer formed a part of the new combination claimed; but if it did not require a different gearing, then the bow-flyer was not in point of law a portion of the new combination. But it is enough to dispose of this last position, to see that it would narrow the question of law as to what kind of flyer was contemplated in the patent, and that it must depend on a single fact, to be found by the jury. Whereas, in truth, that question depended mainly on the language used in the specification and on the drawing, and not upon any fact in the case, which was in dispute at the trial, and debors or independent of the writing. Nor was the court, at the trial, requested to charge the jury, that the construction of the writing in this respect depended on any such fact; nor was it understood to be argued to the jury by the counsel, that the construction depended on it, but rather on the writing itself and the drawing, with some two or three other facts, about which no controversy or conflicting evidence existed.

It is well settled law, also, as to all written instruments, that their meaning is in general to be collected from the language of the instruments themselves. The construction seldom rests on facts to be proved by parol, unless they are so referred to, as to make a part of the description and to govern it; and when it does at all depend on them, and they are proved, or admitted. and are without dispute, as here, it is the duty of the court, on these facts. to give the legal construction to the instrument. But whether the court gave the right construction to the patent in dispute, so far as regards the kind of flyer to be used in it, is a proper question for consideration now; and if any mistake has occurred in relation to it, in the hurry and suddenness of a trial, it ought to be corrected, and will be most cheerfully. There is no doubt as to the general principle contended for by the defendant in this case, that a patentee should describe with reasonable certainty his invention. Several reasons exist for this. One is, the act of congress itself requires, that he "shall particularly specify and point out the part, improvement or combination which he claims as his own invention." Act July 4, 1836, c. 357, § 6 (5 Stat. 119). And another is, that unless this is done, the public are unable to know whether they violate the patent or not,

and are also unable, when the term expires, to make machines correctly, and derive the proper advantages from the patent. Bovill v. Moore, Davies' Pat. Cas. 361; Phil. Pat. 286; Lowell v. Lewis [Case No. 8,568]. These principles, however, are not inconsistent with another one, equally well settled, which is, that a liberal construction is to be given to a patent, and inventors sustained, if practicable, without a departure from sound principles. Only thus can ingenuity and perseverance be encouraged to exert themselves in this way usefully to the community; and only in this way can we protect intellectual property, the labors of the mind, productions and interests as much a man's own, and as much the fruit of his honest industry, as the wheat he cultivates, or the flocks he rears. Grant v. Raymond, 6 Pet. [31 U. S.] 218. See, also, Ames v. Howard [Case No. 326]; Wyeth v. Stone, [Id. 18,107]; Blanchard v. Sprague [Id. 1,-518].

The patent laws are not now made to encourage monopolies of what before belonged to others, or to the public,—which is the true idea of a monopoly,—but the design is to encourage genius in advancing the arts, through science and ingenuity, by protecting its productions of what did not before exist, and of what never belonged to another person, or the public. In this case, therefore, the jury were instructed to consider the case under these liberal views, but not to hold the patent valid, unless the invention, such as the court construed it to be in point of law, was described with so much clearness and certainty, that other machines could readily be made from it, by mechanics acquainted with the subject. Looking to the whole specification and drawing, both the figure and language, could any one doubt that bow-flyers were intended to be used in the new combination which was patented? The figure is only that of a bow-flyer, so is the language. First, the spindles are described as working up and down "through the bottom of the flyers, as seen at a," which is not possible in case of the open flyer, as that has no bottom for the spindle to work in. Again the specification says, "To the bottom of each flyer a tube wheel is attached, as seen at b, figures 1 and 2," which is impracticable with an open flyer. Again it says, motion is communicated to the flyer independently, but that is not feasible with the open flyer. And finally, towards the close, in order to remove all possible doubt, the specification adds,—"It will be seen, that the flyers, as used by me, and shown at i i and k k, are made in one continuous piece, instead of being open at the bottom, as is the case with those generally used in the English fly-frame." All know, that the flyer, in one continuous piece, is the bow-flyer. Besides this, other admitted or apparent facts tended to show, that the bow-flyer alone was intended. One great advantage, claimed from the new combination in

the patent, was an increased velocity of the spindle. Thus, in the early part of the specification, it is stated, among the advantages of his improvement, that "the machine will bear running at a much higher velocity than the English fly-frame." And towards the close, he says, that it is the use of the flyer in "one continuous piece," i. e., the bow-flyer, instead of the open one, as in the English fly-frame, which, "among other reasons, enables me to give the increased velocity above referred to." How could there, then, be any reasonable doubt, that in his patent it was this bow-flyer he intended to use in his new combination? In truth he not only says so, and could not otherwise obtain one of his principal objects and advantages, but it is manifest from the form of the flyer itself, and was not doubted at the trial, that only the bow-flyer could be geared, as he described his flyer to be, in two places, through its bottom; the other form of the open flyer confessedly having no bottom susceptible of being used or geared in this manner. But it is said, the clause at the end does not specify this kind of flyer, and therefore all the rest of the specification is useless, redundant, and entitled to no weight in deciding what kind of a flyer is referred to in the closing part of the specification. We think otherwise. Sometimes the preamble, even, may be resorted to for ascertaining the object of the specification. Winans v. Boston & P. R. R. Co. [Case No. 17,858]. Sometimes, the body of the specification. Russell v. Cowley, 1 Cromp., M. & R. 864. 876. Sometimes, the summing up. Moody v. Fiske [Case No. 9,-745]. And sometimes, the formal clause at the end of the specification. Generally, all of them are examined together, unless the formal clause seems explicitly to exclude the rest, and require a decision on itself alone. McFarlane v. Price, 1 Starkie, 199; Rex v. Cutler, Id. 354; Wyeth v. Stone [Case No. 18,107]; Blanchard v. Sprague [Case No. 1,-518]; Ames v. Howard [supra]; 11 East, 101. But there is no such exclusion or conflict between the formal clause and the rest of the specification. On the contrary, it speaks of no different spindles from what he had just described and boasted of, as giving the increased velocity his machine possessed. And when he proceeds to describe what he claims therein, as new, to be "the arrangement of the spindles and flyers, in two rows, in combination with the described arrangement of gearing," he manifestly refers, not to spindles and flyers generally, but the spindles and flyers before exhibited in his drawing, and described in his specification, viz., the short spindle and bow-flyer, rather than the long spindle and open flyer. And it is not pretended, that any other kind of spindle or flyer could act in combination with the described arrangement of gearing, which he had before given, of spindles working through the bottom of the flyers, and a tube wheel attached to the bottom of each flyer. There

was no fact in doubt about this, to be left to the jury; and there was but one construction as to the kind of flyer intended to be used, that was consistent either with the drawings, or the express language employed, or the chief object of the machine in its increased velocity, or in the practicability of gearing it in the manner before described by him in two important particulars, or of giving motion to it "independently." It is as clear and decisive on this point as if he had said, the "before described" spindles and flyers, because he says the spindles and flyers, "with the described arrangement of gearing;" and no other spindles or flyers, but the short spindles and bow-flyers, could be geared in the manner before described, through the bottoms of the latter. Matters like these must be received in a practical manner, and not decided on mere metaphysical distinctions. Crossley v. Beverley, 3 Car. & P. 513, 514. Taking with us, also, the settled rules, that specifications must be sustained, if they can be fairly (Russell v. Cowley, 1 Cromp., M. & R. 864, 876; Wyeth v. Stone [supra]); that we should not be astute to avoid inventions; and that it is a question for the court, and not the jury, whether the specification can be read and construed intelligibly in a particular way (Whitney v. Emmett [Case No. 17,585]; Blanchard v. Sprague [supra]),—we think the instructions given at the trial in this case were correct, and that no sufficient ground has been shown for a new trial. Motion refused.